**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BRIGHT DATA LTD. <br><br> *Plaintiff*, <br><br> v. <br><br> NINJA-TECH, SIA <br><br> *Defendant*. | Case No.  2:21-cv-434 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Bright Data Ltd. ("Bright Data" or "Plaintiff") brings this action under the patent laws of the United States, Title 35 of the United States Code, and makes the following allegations against Ninja-Tech, SIA ("Ninja-Tech"):

**THE PARTIES**

1.    Plaintiff Bright Data is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

2.    Upon information and belief, Ninja-Tech is a Latvian company located at 91 Brivibas Street, Riga, Latvia.

**JURISDICTION AND VENUE**

3.    This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, et seq.

4.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338, and/or 1367.

1

5.      This Court has personal jurisdiction over Ninja-Tech because it, directly or through its subsidiaries, divisions, groups, distributors, or partnerships has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2). On information and belief, Ninja-Tech transacts substantial business in the State of Texas, directly or through agents, including upon information and belief: (i) at least a portion of the infringement alleged herein, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas.  For example, Defendant advertises its software or "SDK", IPs and proxy services, including through its website, which are directed toward a global audience including users of the SDK ("SDK Users") in the United States and Texas, and these advertisements tout Defendant's proxy services through the integration of its SDK software into applications ("apps") as being located throughout the world, including the United States. *See e.g.* https://ninjatech.io/ ("works with any Geo.")  Upon information and belief Ninja-Tech has SDK Users supporting its proxy services located in Texas which implement at least a portion of the infringement herein.  In addition, Ninja-Tech utilizes its software or SDK, which is the subject of the infringement alleged herein, that is embedded in a number of software applications which are placed into the stream of commerce with the knowledge, understanding, and/or intention that they be downloaded and executed by devices located in the State of Texas, as well as this Judicial District. Upon information and belief, the software or SDK effectively turns the devices on which it is installed into peer-to-peer ("P2P") residential proxy devices that operate as part of Ninja-Tech's "Proxy Services" under Ninja-Tech's control.  The Accused Services ("Accused Services") comprise Ninja-Tech's IPs, Proxy Services and SDK software integration

2

and any substantially similar service including services that utilize proxy IP addresses from client devices. The Accused Services are offered, operated, and provided by Ninja-Tech.

6.      The Ninja-Tech website, as illustrated in the excerpts below, provide examples of its services and software offerings. These include mobile apps development and Proxy Services that can monetize a user's device idle bandwidth. The website further explains where at least through the use of an SDK running on an application on the user's Android device, that device's idle bandwidth can be used to provide proxy services to online and e-commerce companies. The website further advertises that its software works on both mobile and FireTV and Streamer applications, anywhere in the world.  *See* Exhibits C-F.

## About Us

### What is Ninja-Tech ?

**Ninja-Tech** is a service provider company that offers IT developments mostly  in web environment to online and e-commerce companies.

We provide services such as
* Idle bandwidth monetization
* Premium video ad monetization
* Websites & mobile apps developments
* API integrations to 3rd parties vendors
* Complex DB design & maintenance
* IPs and Proxy Services

Exhibit C, https://ninjatech.io/about-us

# Products



Idle Bandwidth Monetization for Android

Bandwidth monetization SDK by Ninja is the most complete monetization solution for Android TV and mobile app publishers. Ninja SDK allows you to monetize your users' idle bandwidth resources and create a new revenue source from your app.

Exhibit D, https://ninjatech.io/

Premium Video Ads

Ninja Video Ads allows you to incorporate premium, branded video advertising into your application. You'll earn a revenue share from every impression. Our video ad platform connects publishers with brands and brings premium video ads with high CPMs.



Ex. D, https://ninjatech.io/

# Features

Quick Integration



Clean and non-intrusive UI



Works with any GEO



Attractive Payment Terms



Stable and Reliable Revenue Source



Intuitive Dashboard Access



Ex. D, https://ninjatech.io/

# Overview

## What is NinjaTech?

NinjaTech is a new ad-free app monetization solution that allows app owners to create a stable revenue stream by monetizing their user's idle resources.

## Which platforms are supported?

**NinjaTech's SDK is compatible with all Android platforms.**
We are offering two versions:
- A version that handles the management channel.
- Another version that handles the actual data mechanism.

## Is NinjaTech collecting data?

No. NinjaTech's SDK focuses on the user's idle resources monetization.
Our SDK does not collect any 1st party data from the user's device or the app itself.

## Why should I work with NinjaTech?

No. NinjaTech's SDK focuses on the user's idle resources monetization.
Our SDK does not collect any 1st party data from the user's device or the app itself.

Exhibit E, https://ninjatech.io/faq

## Is NinjaTech collecting data?

NinjaTech was founded by industry veterans who've decided to create a new way to monetize free apps without the need to harm the UX, show ads, or collect user data.

**NinjaTech's SDK is light so that it won't impact your app's size and performance**.

## How do I sign up?

Click Here to register. Upon completing your signup registration, you'll be required to fill a short questionnaire. Once our partners' team reviews the questionnaire, you'll receive access to download the SDK and integration documents.

## Which types of SDKs are available?

NinjaTech offers two types of SDKs.

Our **1.8 series** is designed for Mobile Phone applications, while the **8.1 series** is for FireTV and Streamer applications.

Ex. E, https://ninjatech.io/faq

## How does NinjaTech works on Mobile?

The Mobile SDK (**1.8 Series**) is working in a Pull-Push manner.
The SDK calls our API to receive a URL to visit and deliver its content in HTML.
Each device embedded with the SDK calls the API once every 10 minutes.

The payment is calculated based on the **number of calls** the API received x **price per call**.

## How NinjaTech is working on Streamer\FireTV Apps?

The streamer/FireTV SDK (**8.1 Series**) is making ethical use of the user's idle resources. The monetization is calculated based on the time the user appeared as active in our system.
(An active user is considered as such if his device was idle for at least 6 hours/day.)

The payout is calculated based on the total available **activity time** x **price per minute**.

Ex. E, https://ninjatech.io/faq



Exhibit F, https://reports.ninjatech.io/register

7.      Upon information and belief, residential proxy devices with the embedded software are located throughout the United States, including Texas.

8.      Upon information and belief, Ninja-Tech is subject to this Court's jurisdiction because it committed patent infringement in the State of Texas and this jurisdiction.  This Court has general jurisdiction over Ninja-Tech due to its continuous and systematic contacts with the State of Texas and this jurisdiction.

9.      Following *Brunette Machine Works v. Kockum Industries, Inc*., 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, upon information and belief, Ninja-Tech is a foreign entity.

## FACTUAL ALLEGATIONS

10.     Derry Shribman and Ofer Vilenski are the sole inventors of a number of patents, including U.S. Patent No. 10,257,319 (Exhibit A, "'319 Patent") issued on April 9, 2019 and U.S. Patent No. 10,484,510 (Exhibit B, "'510 Patent") issued on November 19, 2019 (collectively the "Asserted Patents").

11.     The '319 Patent and '510 Patent are divisionals sharing the same specification and are both titled "System Providing Faster and More Efficient Data Communication."  Bright Data identifies its '319 and '510 patents on its website at https://Bright Data.io/patent-marking. Bright Data is the assignee and sole owner of the Asserted Patents.

12.     Bright Data, formerly known as Luminati Networks Ltd. ("Luminati") and Hola Networks Ltd. ("Hola"), provides a cloud service connecting tens of millions of devices over the Internet through a proxy-based network.  Each participating device allows the service to utilize a fraction of that device's idle time for the network.  Bright Data utilizes this network to provide proxy-based services to its customers.

13.     Since 2014, Bright Data has offered proxy-based services relying on its "Residential Proxy Network" that practice one or more claims of the Asserted Patents.  Bright Data permits its business customers to utilize its residential proxy network to gather data over the Internet using residential proxy devices from various localities as required by the customers. Because each of these residential proxy devices has its own residential IP address, web servers receiving requests from these proxy devices do not recognize such requests as originating from the actual user making the request.  Instead, the server identifies the request as coming from a residential device based upon the residential IP address of the proxy device.  These residential proxy devices provide businesses with a number of advantages.  For example, online retailers may

anonymously use these residential proxy devices to gather information from web servers (such as for comparative pricing), businesses may utilize these devices to test their web sites from any city in the world, and cyber security firms may employ these devices to test web sites for malicious code.  Following Bright Data's "Residential Proxy Network," Bright Data subsequently introduced related proxy services including its "ISP Proxies" and "Mobile Proxies," (collectively with the Residential Proxy Network referred to as "Bright Data Proxy Network") which also practice one or more claims of the Asserted Patents.

14.     Prior to and separate from the technology at issue in this case, Hola provided a virtual private network ("VPN") service called HolaVPN.

15.     Upon information and belief, Ninja-Tech's officers are keenly aware of the entire family of patents sharing the specification of the Related Patents, including the Asserted Patents. Upon information and belief, Ninja-Tech officers are also aware of Bright Data's patent marking webpage, on which the Asserted Patents are listed.  Upon information and belief, Ninja-Tech is aware of other lawsuits that have been filed by Plaintiff alleging infringement of the asserted patents by peer-to-peer residential proxy services like the Accused Services, of which the case of *Bright Data Ltd. v. Teso LT, UAB et al.*, case no. 2:19-cv-395 including the same patents asserted here resulted in jury verdict finding infringement, no invalidity and lost profits. *See* Exhibit G, Dkt. 516, Jury Verdict Form. Ninja-Tech has had knowledge of the Asserted Patents and infringement since before the introduction of the Accused Services, and has willfully infringed the Asserted Patents.

16.     Upon information and belief, "Ninja-Tech" is the brand name for Defendant's proxy business generally, including but not limited to the Accused Services.  Upon information

and belief, this includes a peer-to-peer residential proxy network utilizing residential devices, each with its own IP address.

17.     Ninja-Tech touts their proxy services as "Works with any GEO."  *See* Ex. D, https://ninjatech.io/.  Upon information and belief, the proxy services have IP addresses that are generated through real end-users devices, *e.g.*, "Which platforms are supported? NinjaTech's SDK is compatible with all Android platforms. We are offering two versions: - A version that handles the management channel.  – Another version that handles the actual data mechanism." *Id.*  Upon information and belief, this proxy service is used to access content over the Internet, wherein that content is identified by a content identifier.  "The SDK calls our API to receive a URL to visit and deliver its content in HTML. Each device embedded with the SDK calls the API once every 10 minutes." *Id.*  Upon information and belief, Ninja-Tech's proxy services support Accused Services, as shown in the images above.  Upon information and belief, these residential proxies include residential proxy devices located in Texas.

18.     Upon information and belief, the Ninja-Tech proxy services network of the Accused Services is based upon numerous consumer devices or proxy client devices, such as laptops, desktops, smartphones, streaming devices, and tablets, each of which is a client device identifiable over the Internet by an identifier, such as (but not limited to) an IP address, *e.g.*, "Ninja-Tech offers two types of SDKs. Our 1.8 series is designed for Mobile Phone applications, while the 8.1 series is for FireTV and Streamer applications." *Id.*  Upon information and belief, these client devices become part of the network through the execution of software, such as by implementation of Ninja-Tech's software development kit ("SDK") that is embedded in software applications downloaded on the client devices.  Upon information and belief, these proxy client devices are available to receive requests submitted through the Accused Services and send the

requests to a target web server, as well as sending any content received from the target web server to a requesting customer via the client devices using Ninja-Tech SDK software.

19.     Upon information and belief, Ninja-Tech provides instructions on how to use its SDK software for use in an application that is executed on a client device.

20.     Upon information and belief, Ninja-Tech controls client devices upon which Ninja-Tech's proxy services network operates through SDK(s) installed on third-party client devices.

21.     Ninja-Tech provides a residential proxy service through the Accused Services allowing a Ninja-Tech customer to utilize peer-to-peer residential proxy devices in fetching content over the Internet.  Upon information and belief, SDKs supporting the Accused Services are installed on residential devices causing the devices to perform the steps of at least claim 1 of the '319 Patent (U.S. Patent No. 10,257,319) and claim 1 of the '510 Patent (U.S. Patent No. 10,484,510).  This embedded code is under the control of Ninja-Tech, either directly or via Ninja-Tech's contractual relationship with its partners and/or developers, *e.g.*, "[t]he Mobile SDK (1.8 Series) is working in a Pull-Push manner" where "[t]he SDK calls our API to receive a URL to visit and deliver its content in HTML" and that "[e]ach device embedded with the SDK calls the API once every 10 minutes." Ex. E, https://ninjatech.io/faq.

22.     As this code is under the control of Ninja-Tech, Ninja-Tech causes each of the steps of at least claim 1 of the '510 Patent and at least claim 1 of the '319 Patent to be performed.  In addition, given Ninja-Tech's contractual relationship with application developers and other entities selling proxy services using Ninja-Tech's SDK software, such utilization of the Accused Services also causes each of the claimed steps to be performed.

23.     Specifically, upon information and belief, Ninja-Tech's proxy services network comprises numerous proxy devices, each of which is a client device such as a laptop, desktop,

streaming devices, tablet, or smartphone identifiable by its own identifier, such as (but not limited to) an IP address, with an SDK operating on that device.  Upon information and belief, the proxy devices of the Accused Services send their identifiers to a server of the Accused Services, following the proxy client device connecting to the Internet.

24.     Upon information and belief, the proxy client device is responsive to receiving a request from the server using the Accused Services.  Upon information and belief, having received a request from a server using the Accused Services, the proxy client device is used to fetch content identified by a content identifier over the Internet from a web server, which stores the content. Upon information and belief, the proxy client device fetches content by (a) receiving a content identifier from the server using the Accused Services; (b) sending the content identifier to the web server; (c) receiving the content from the web server in response to the sending of the content identifier to the web server; and (d) sending the content to the server using the Accused Services. Upon information and belief, the above steps are executed including, for example, on the proxy client device by Ninja-Tech's SDK software installed in software, such as an app, on that device, which can be downloaded on that proxy client device from servers on the Internet.

25.     Upon information and belief, web servers are or include Hypertext Transfer Protocol (HTTP) servers that respond to HTTP requests including both normal HTTP and HTTPS requests, and the proxy device may send an HTTP request comprising the content identifier to the web server.  Further, upon information and belief, the proxy device may establish Transmission Control Protocol (TCP) connections with the server using the Accused Services and web server, with the content identifier and content sent over the established TCP connections to and from the proxy device.  Similarly, upon information and belief, the proxy device may establish a TCP connection with the web server.

26.     Upon information and belief, each proxy device stores, operates, or uses a client operating system including but not limited to a mobile operating system such as Android version 2.2, 2.3, 4.0, 4.2, 4.4, and the Fire OS operating system.

27.     The use of the proxy services network permits anonymity to certain entities, such as for engaging in activities like as web crawling, without disclosing the identity of the searching entity to the targeted web sites.

### COUNT I
(Infringement of US. Patent Nos. 10,257,319 - the '319 Patent)

28.     Bright Data repeats and re-alleges the allegations contained in paragraphs 1–27 of this Complaint as if fully set forth herein.

29.     The '319 Patent entitled "System Providing Faster and More Efficient Data Communication" was duly and legally issued by the U.S. Patent and Trademark Office on April 9, 2019, from Application No. 15/957,945 filed on April 20, 2018, which is a continuation of application No. 14/025,109, which is a division of application No. 12/836,059, now Pat. No. 8,560,604, all of which claim priority to provisional application 61/249,624 filed on October 8, 2009.  A true and accurate copy of the '319 Patent is attached hereto as Exhibit A.

30.     Each and every claim of the '319 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

31.     Bright Data is the sole owner of the '319 Patent and has rights to past damages.

32.     Claim 1 of the '319 Patent recites:

A method for use with a first client device, for use with a first server that comprises a web server that is a Hypertext Transfer Protocol (HTTP) server that responds to HTTP requests, the first server stores a first content identified by a first content identifier, and for use with a second server, the method by the first client device comprising:

receiving, from the second server, the first content identifier;

sending, to the first server over the Internet, a Hypertext Transfer Protocol (HTTP) request that comprises the first content identifier;

receiving, the first content from the first server over the Internet in response to the sending of the first content identifier; and

sending, the first content by the first client device to the second server, in response to the receiving of the first content identifier.

33.     As described in the above paragraphs, upon information and belief, the Accused Services comprise numerous proxy client devices each of which is a client device ("first client device") and a server using the Accused Services ("second server"). An HTTP web server that responds to HTTP requests ("first server") stores content ("first content") identified by an identifier ("first content identifier"), such as for example an HTTP web server storing a webpage identified by a URL address.  As described above, a first client device (a) receives a first content identifier from the second server using the Accused Services; (b) sends an HTTP request comprising the first content identifier to the first server; (c) receives the first content from the first server over the Internet in response to the sending of the first content identifier; and (d) sends the first content to the second server using the Accused Services in response to receiving the first content identifier.

34.     Ninja-Tech has actual notice of the '319 Patent since before it developed and released the Accused Services and knows at least from this Complaint, in addition to the means set forth above, that implementation of the Accused Services using residential proxy devices in the United States would infringe at least claim 1of the '319 Patent.

35.     Upon information and belief Ninja-Tech sold, offered to sell, used, tested, and imported and continue to sell, offer to sell, use, test, and import the Accused Services into the United States.  Ninja-Tech provides the proxy services of the Accused Services to their customers with the knowledge and intent that the customers' implementation of the service using residential proxies located in the U.S. would infringe the '319 Patent.

36.     Ninja-Tech has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claim 1 of the '319 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Services using residential proxy devices located in the United States without authority and/or license from Bright Data and are liable to Bright Data under 35 U.S.C. § 271 et seq., including but not limited to under Sections 271(a), (b), (c) and/or (g).   On information and belief, Ninja-Tech has been aware of the Asserted Patents prior to the development and release of the Accused Services yet has continued to infringe and cause proxies in the United States under Ninja-Tech's control to infringe claims of the Asserted Patents and has induced infringement.   On further information and belief, Ninja-Tech has itself and/or through its SDK partners developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.   On further information and belief, Ninja-Tech also imports and sells as well as causes others to use within the United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.   Such products may include for example, the set of results sent to customers and/or users in the United States as created and assembled by the patented methods of the Asserted Patents.

37.     As a result of Ninja-Tech's infringement of the '319 Patent, Bright Data has suffered and continues to suffer damages.   Thus, Bright Data is entitled to recover from Ninja-Tech the damages Bright Data sustained as a result of Ninja-Tech's wrongful and infringing acts

in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

38.     Bright Data has suffered damage because of the infringing activities of Ninja-Tech, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Bright Data will continue to suffer irreparable harm for which there is no adequate remedy at law unless Ninja-Tech's infringing activities are preliminarily and permanently enjoined by this Court.  Bright Data practices the Asserted Patents and, on information and belief, practicing the Asserted Patents is required for a competitive offering of residential proxy services, a technology and market that Bright Data created.  Non-exclusive examples of such damage include loss of market share, lowered prices and the inability of Bright Data to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase residential proxy services from Bright Data as a result of the infringement, loss of convoyed sales of other related services that Bright Data would have sold but for the infringement, and harm to Bright Data's reputation as a result of Ninja-Tech's lower quality and less protected offerings damaging the reputation and perception of the residential proxy service market that relies on the technology of the Asserted Patents.

39.     Upon information and belief, Ninja-Tech's infringement of the '319 Patent is and continues to be deliberate and willful because Ninja-Tech was and is on notice of the '319 Patent before it developed and introduced the Accused Services in the United States, yet Ninja-Tech continues to infringe the '319 Patent.  This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Bright Data is entitled to recover its attorneys' fees.

**COUNT II**
(Infringement of U.S. Patent No. 10,484,510 - the '510 Patent)

16

40.     Bright Data repeats and re-alleges the allegations contained in paragraphs 1–39 of this First Amended Complaint as if fully set forth herein.

41.     The '510 Patent entitled "System Providing Faster and More Efficient Data Communication" was duly and legally issued by the U.S. Patent and Trademark Office on November 19, 2019, from Application No. 16/278,107 filed on February 17, 2019, a continuation of Application No. 15/957,945, now Pat. No. 10,257,319, which is a continuation of application No. 14/025,109, now Pat. No. 10,069,936, which is a divisional of application No. 12/836,059, now Pat. No. 8,560,604, all of which claim priority to provisional application 61/249,624 filed on October 8, 2009. A true and accurate copy of the '510 Patent is attached hereto as Exhibit B.

42.     This Court previously found Claim 13 of the '510 Patent indefinite, though the determination is subject to appellate review.  Further, the *Teso* Action jury found claims 1 and 22 of the '510 Patent not invalid.  *See* Ex. G. Otherwise, each and every claim of the '510 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

43.     Bright Data is the sole owner of the '510 Patent and has rights to past damages.

44.     Claim 1 of the '510 Patent recites:

A method for use with a web server that responds to Hypertext Transfer Protocol (HTTP) requests and stores a first content identified by a first content identifier, the method by a first client device comprising:

establishing a Transmission Control Protocol (TCP) connection with a second server;

sending, to the web server over an Internet, the first content identifier;

receiving, the first content from the web server over the Internet in response to the sending of the first content identifier; and

sending the received first content, to the second server over the established TCP connection, in response to the receiving of the first content identifier.

45.     As described in the above paragraphs, upon information and belief, the Accused Services comprise numerous proxy devices each of which is a client device ("first client device") and a server using the Accused Services ("second server").  A web server that responds to HTTP requests ("web server") stores content ("first content") identified by an identifier ("first content identifier"), such as for example an HTTP web server storing a webpage identified by a URL address.  As described above, a first client device (a) establishes a TCP connection with a second server; (b) sends the first content identifier to the web server; (c) receives the first content from the web server over the Internet in response to the sending of the first content identifier; and (d) sends the received first content to the second server of the Accused Services over the established TCP connection in response to the receiving of the first content identifier.

46.     Upon information and belief, Ninja-Tech has had actual notice of the '510 Patent since before it developed and released the Accused Instrumentalities and knows at least from the Complaint that implementation of the Accused Instrumentalities using residential proxy devices in the United States would infringe at least claim 1 of the '510 Patent.

47.     Upon information and belief Ninja-Tech sold, offered to sell, used, tested, and imported and continue to sell, offer to sell, use, test, and import the Accused Instrumentalities into the United States.  Ninja-Tech provides the residential service of the Accused Instrumentalities to their customers with the knowledge and intent that the customers' implementation of the service using residential proxies located in the U.S. would infringe the '510 Patent.

48.     Ninja-Tech has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claim 1 of the '510 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Instrumentalities using residential proxy devices located in the United States without authority and/or license from Bright Data and

are liable to Bright Data under 35 U.S.C. § 271 et seq., including but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, Ninja-Tech has been aware of the Asserted Patents since before the development and release of the Accused Instrumentalities in the United States yet has continued to infringe and cause proxies in the United States under Ninja-Tech's control to infringe claims of the Asserted Patents and has induced infringement.  On further information and belief, Ninja-Tech has itself and/or through its SDK partners developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.  On further information and belief, Ninja-Tech also imports and sells as well as causes others to use within the United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers and/or users in the United States as created and assembled by the patented methods of the Asserted Patents.

49.     As a result of Ninja-Tech's infringement of the '510 Patent, Bright Data has suffered and continues to suffer damages.  Thus, Bright Data is entitled to recover from Ninja-Tech the damages Bright Data sustained as a result of Ninja-Tech's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

50.     Bright Data has suffered damage because of the infringing activities of Ninja-Tech, its officers, agents, servants, employees, associates, partners, and other persons who are in active

concert or participation therewith, and Bright Data will continue to suffer irreparable harm for which there is no adequate remedy at law unless Ninja-Tech's infringing activities are preliminarily and permanently enjoined by this Court.  Bright Data practices the Asserted Patents and, on information and belief, practicing the Asserted Patents is required for a competitive offering of residential proxy services, a technology and market that Bright Data created. Non-exclusive examples of such damage include loss of market share, lowered prices and the inability of Bright Data to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase residential proxy services from Bright Data as a result of the infringement, loss of convoyed sales of other related services that Bright Data would have sold but for the infringement, and harm to Bright Data's reputation as a result of Ninja-Tech's lower quality and less protected offerings damaging the reputation and perception of the residential proxy service market that relies on the technology of the Asserted Patents.

51.     Ninja-Tech's infringement of the '510 Patent is and continues to be deliberate and willful because Ninja-Tech was and is on notice of the '510 Patent at least as early as the Complaint, yet Ninja-Tech continues to infringe the '510 Patent. This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Bright Data is entitled to recover its attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bright Data respectfully requests that this Court enter:

A.  A judgment in favor of Bright Data that Ninja-Tech has and is infringing the Asserted Patents;

B.  A judgment declaring Ninja-Tech's infringement to be willful;

C.  A judgment declaring that this case is exceptional within the meaning of 35 U.S.C. § 285;

D.  A permanent injunction enjoining Ninja-Tech, its officers, directors, agents, servants, employees, associates, partners, and other persons who are in active concert or participation with Ninja-Tech including the officers, directors, agents, servants, employees and associates of Ninja-Tech's partners, from infringing the Asserted Patents and/or such other equitable relief the Court determines is warranted in this case;

E.  A judgment and order requiring Ninja-Tech to pay to Bright Data its damages, enhanced damages, costs, expenses, prejudgment and post-judgment interest, and attorneys' fees, if applicable, for Ninja-Tech's infringement of the Asserted Patents as provided under 35 U.S.C. §284 and/or §285, and an accounting of ongoing post-judgment infringement;

J.  Disgorgement of the amount by which Ninja-Tech have been unjustly enriched; and

K.  Any and all other relief, at law or in equity that this Court deems just or proper.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Bright Data hereby demands a trial by jury of all issues so triable.


Dated:  November 29, 2021                    Respectfully submitted,

By: */s/ Robert Harkins*
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647

Telephone: 903-845-5770
ederieux@capshawlaw.com

J. Mark Mann
G. Blake Thompson
Mann | Tindel | Thompson
300 West Main
Henderson, TX 75652
mark@themannfirm.com
blake@themannfirm.com
Office 903-657-8540
Marshall Office 903-472-4294
Tyler Office 903-596-0900
Waco Office 254-776-3336

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94704
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

Thomas Dunham
Ronald Wielkopolski
J. Michael Woods
Colby A. Davis
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
tomd@ruyakcherian.com
ronw@ruyakcherian.com
michaelw@ruyakcherian.com
colbyd@ruyakcherian.com

*Attorneys for Plaintiff*
*Bright Data Ltd.*